## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

NEVILA SWEETMAN,
     Plaintiff,

     v.

JOHN ERHAN, *et al.*,
     Defendants.

No. 3:25-cv-1756 (SRU)

## <u>ORDER ON MOTION TO REMAND</u>

Plaintiff Nevila Sweetman ("Sweetman") sued defendants John Erhan ("Erhan"),[1] AD

Lucky Trans Ltd. ("AD Lucky"), and T. Pine Leasing Capital Limited Partnership (collectively,

the "Defendants")[2] in Connecticut state court for injuries Sweetman sustained in a car accident

caused by the Defendants' alleged negligence.  Doc. No. 1-1 at 3-7.  Defendants removed the

lawsuit to this court pursuant to 28 U.S.C. § 1441, *et. seq.*, and 28 U.S.C. § 1332(a)(1).  Doc. No.

1 at 1-2

Sweetman moved to remand the case to state court arguing the Defendants' removal was

untimely and, therefore, procedurally improper.  Doc. No. 12 at 1-2.  Defendants Erhan and AD

Lucky oppose Sweetman's motion to remand and contend their removal was proper.  *See*

*generally* Doc. No. 14.

For the following reasons, I **grant** the Sweetman's motion to remand, doc. no. 12.

---

[1] The Defendants state that Sweetman incorrectly sued John Erhan and that he should have been properly sued as
"Erhan John Er."  Doc. No. 1 at 1; Doc. No. 14 at 1.  I will refer to the named defendant "John Erhan" as "Erhan" to
avoid any confusion.
[2] Defendants Erhan and AD Lucky filed a notice and suggestion of bankruptcy on May 30, 2025 stating defendant T.
Pine Leasing Capital Limited Partnership filed a "Petition for Recognition of a Foreign Main Proceeding under Title
11, Chapter 15, of the United States Code, in the United States Bankruptcy Court for the District of Delaware."
Doc. No. 1-3 at 2.  Although named as a defendant in this case, no attorney has filed an appearance on behalf of T.
Pine Leasing Capital Limited Partnership.  Proceedings against T. Pine Leasing Capital Limited Partnership are
stayed due to the bankruptcy filing.

I.    **Background**

On November 25, 2024, Sweetman's counsel mailed a settlement demand to the

Defendants for their full insurance policy limits.  Doc. No. 12 at 2; Doc. No. 12-1 ¶ 3.

Sweetman asserts that Federal law requires the policy limits to be at least $750,000.  *Id.*  "The

letter was not returned [as] undeliverable."  Doc. No. 12 at 2.  *See also* Doc. No. 12-1 ¶ 4.

Sweetman then served the Defendants with a copy of the complaint through the Connecticut

Secretary of State on January 17, 2025, and filed the complaint in Connecticut Superior Court on

February 24, 2025.  Doc. No. 12 at 2-3; Doc. No. 12-1 ¶¶ 5-6.

On April 21, 2025, Sweetman "sent a copy of the signed summons and complaint to

Attorney Gary Kaisen" ("Attorney Kaisen"), counsel of record for Erhan and AD Lucky,

because there was no appearance on file for the Defendants in the state court case.  Doc. No. 12

at 3; Doc. No. 12-1 ¶ 7.  Attorney Kaisen contacted Sweetman's counsel on May 20, 2025 "for

the first time since [Sweetman sent] the original November 25, 2024 demand."  Doc. No. 12 at 3.

*See also* Doc. No. 12-1 ¶ 8.  Sweetman alleges that Attorney Kaisen confirmed via email that the

insurance coverage for Erhan and AD Lucky was $1.4 million to $2.1 million.  Doc. No. 12 at 3;

Doc. No. 12-1 ¶¶ 8-9.  Additionally, Sweetman's counsel sent Attorney Kaisen the following

email on May 20, 2025:

> Further, on November 25, 2024, we demanded the policy limits of your clients to
> resolve this matter. Importantly, since that date, you have known that our demand
> [exceeded] $750,000.00, and you recently confirmed your clients have coverage of
> at least $1.4 million USD. $750,000.00 is the minimum insurance coverage
> required to operate a commercial motor carrier on the roads of the United States.
> This means that you cannot claim you thought our demand was below the
> jurisdictional limit of the federal court ($75,000.00).

Doc. No. 12 at 3 (internal quotation marks omitted); Doc. No. 12-1 ¶ 11 (same as previous).

Sweetman's counsel also stated in the email that "if Attorney Kaisen sought an improper

removal, [Sweetman] would seek attorneys' fees and costs for seeking a remand."  Doc. No. 12 at 4.  *See also* Doc. No. 12-1 ¶ 12.

On May 21, 2025, at Attorney Kaisen's request, Sweetman's counsel reiterated Sweetman's November 25, 2024 demand "for the entirety of the policy limit" in an email communication.  Doc. No. 12 at 4; Doc. No. 12-1 ¶ 13.  "Attorney Kaisen acknowledge[d] receipt of the policy limits demand on May 20, 2025 and May 21, 2025."  Doc. No. 12 at 4.  *See* Doc. No. 12-1 ¶ 14 (acknowledging Sweetman's $750,000 demand in an email from Attorney Kaisen to Sweetman's counsel).

Following Sweetman's May 2025 settlement demand, the Defendants filed motions to dismiss the state court case on June 20, 2025 and July 8, 2025.  Doc. No. 12 at 4; Doc. No. 12-1 ¶ 16.  The Connecticut Superior Court denied the Defendants' motions to dismiss on August 21, 2025.  Doc. No. 12 at 4; Doc. No. 12-1 ¶ 17.  *See also Sweetman v. Erhan*, Dkt. No. HHD-CV25-6199631-S.  Sweetman then submitted responses to initial interrogatories and requests for production on August 25, 2025, including "medical bills totaling $49,177.44 and medical records indicating serious injuries."  Doc. No. 12 at 4; Doc. No. 12-1 ¶ 18.  On September 11, 2025, the parties agreed to a scheduling order in Connecticut Superior Court and set a trial date for August 12, 2026.  Doc. No. 12 at 4; Doc. No. 12-1 ¶ 19.  Sweetman filed two $735,000 offers of compromise in the Connecticut Superior Court on September 18, 2025, offering to settle the case with defendants Erhan and AD Lucky.  Doc. No. 12 at 5; Doc. No. 1-2 at 2-4.

On October 17, 2025, defendants Erhan and AD Lucky removed the present action to this Court under 28 U.S.C. §§ 1332 and 1441(b).  Doc. No. 1 at 1.  On October 24, 2025, Sweetman moved to remand the case to Connecticut Superior Court.  Doc. No. 12.  Erhan and AD Lucky oppose the motion.   Doc. No. 14.

## II.    Standard of Review

District courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States[.]"  28 U.S.C. § 1332(a)(1); *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187-88 (1990).  "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

"The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."  28 U.S.C. § 1446(b)(1).  Additionally,

> if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3).

Some exceptions to removal apply to cases removed based on diversity jurisdiction under section 1332.  Those exceptions include that a case may not be removed under section 1446(b)(3) "more than [one] year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).  Further, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy."  28 U.S.C. § 1446(c)(2).  However, "the notice of removal may assert the amount in controversy if the initial pleading seeks . . . nonmonetary relief" or "a money judgment, but the State practice either does not permit demand

4

for a specific sum or permits recovery of damages in excess of the amount demanded."  28

U.S.C. § 1446(c)(2)(A).  If the notice of removal asserts the amount in controversy pursuant to

section 1446(c)(2)(A), then removal is proper "if the district court finds, by a preponderance of

the evidence, that the amount in controversy exceeds" $75,000.  28 U.S.C. § 1446(c)(2)(B).

Finally, "[i]f the case stated by the initial pleading is not removable solely because the amount in

controversy does not exceed" $75,000, then "information relating to the amount in controversy

in the record of the State proceeding, or in responses to discovery, shall be treated as an 'other

paper' under subsection (b)(3)."  28 U.S.C. § 1446(c)(3)(A) (quoting 28 U.S.C. § 1446(b)(3)).

      Even if federal jurisdiction exists over the removed case, a plaintiff may challenge the

propriety of removal based on procedural defects and move to remand a case to state court

"within 30 days after the filing of the notice of removal."  28 U.S.C. § 1447(c).  "In light of the

congressional intent to restrict federal court jurisdiction, as well as the importance of preserving

the independence of state governments, federal courts construe the removal statute narrowly,

resolving any doubts against removability."  *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208,

213 (2d Cir. 2013) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

*See also California v. Atl. Richfield Co. (In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.)*,

488 F.3d 112, 124 (2d Cir. 2007) ("[S]tatutory procedures for removal are to be strictly

construed . . . .") (quoting *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002)).  The

statutory time limit is "mandatory" and, absent waiver or estoppel, "rigorously enforce[d]."

*Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1046 (2d Cir. 1991).

      "A party invoking the jurisdiction of the federal court has the burden of proving" there is

a "reasonable probability that the claim [exceeds] the statutory jurisdictional amount."  *Tongkook*

*Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (internal quotation marks

omitted).  A case is removable when the initial pleading allows "the defendant to 'intelligently ascertain' removability from the face" of the pleading.  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 205-06 (2d Cir. 2001) (quoting *Richstone v. Chubb Colonial Life Ins.*, 988 F. Supp. 401, 403 (S.D.N.Y. 1997)).  The standard "requires a defendant to apply a reasonable amount of intelligence in ascertaining removability."  *Whitaker*, 261 F.3d at 205-06.  *See also Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 143 (2d Cir. 2014) (holding that, after *Moltner*, defendants must still "apply a reasonable amount of intelligence in ascertaining removability").  "[D]efendants have no independent duty to investigate whether a case is removable."  *Cutrone*, 749 F.3d at 143.  However, "[w]here the pleadings themselves are inconclusive as to the amount in controversy, . . . federal courts may look outside those pleadings to other evidence in the record."  *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994).

## III.    Discussion

In her motion to remand, Sweetman argues that Erhan and AD Lucky's removal is untimely because:  (1) service of the complaint started the removal 30-day clock; (2) the settlement demand, initial pleadings, and correspondence with Sweetman's counsel in April and May 2025 started the 30-day removal clock; (3) Sweetman's discovery responses are relevant to the amount in controversy; (4) the Defendants chose to litigate the matter in Connecticut Superior Court; and (5) the offers of compromise have no additional weight compared to the pre- and post-suit settlement demands.  Doc. No. 12 at 7-16.  Sweetman also requests "reasonable attorney's fees pursuant to 28 U.S.C. § 1447(c)."  *Id.* at 16.

Erhan and AD Lucky oppose Sweetman's motion to remand, contending that their removal was proper because:  (1) pre-complaint communications do not start the thirty-day

removal clock; (2) emailed settlement demands are not "other paper" under section 1446(b); (3) Sweetman's discovery responses did not establish removability; (4) the Defendants' litigation in state court is immaterial; and (5) the 30-day removal clock only began when Sweetman filed offers of compromise in the state court case. Doc. No. 14 at 2-7. Additionally, the Defendants argue that Sweetman should not be awarded attorneys' fees because the Defendants' removal was proper and in good faith. *Id.* at 8.

I need not decide whether the Defendants actually received Sweetman's November 25, 2024 settlement demand. If they had, the case would have been removable when served on the Defendants. There is no dispute that several months after service of the complaint, the Defendants were informed of Sweetman's settlement demand by the May 20 and 21, 2025 communications from Sweetman's counsel to the Defendants' counsel. Accordingly, the Defendants knew that the amount in controversy exceeded $75,000 several months before their October 17, 2025 removal. Therefore, that removal was untimely, and the case must be remanded.[3] However, I decline to award attorneys' fees.

A. <u>Whether service of the complaint started the removal 30-day clock</u>

Sweetman argues that service of her complaint on January 17, 2025 began the 30-day removal clock because the Defendants "had all of the necessary information to require removal within 30 days on or shortly after January 17, 2025." Doc. No. 12 at 8. Namely, Sweetman's November 25, 2024 settlement demand for the Defendants' full insurance policy limits provided the requisite notice that the amount in controversy was greater than the $75,000 jurisdictional threshold. *Id.* Sweetman alleges, and the Defendants do not dispute, that federal law requires

---

[3] The diversity of citizenship requirement is met. Sweetman is a citizen of Connecticut, Erhan is a citizen of Canada, and AD Lucky is a citizen of Canada. Doc. No. 1 at 2.

that the Defendants hold a minimum policy covering $750,000 and that their fully policy limits are $1.4 million to $2.1 million. *Id.* at 2.

Erhan and AD Lucky argue that Sweetman's pre-suit settlement demand did not trigger the 30-day removal clock at the time Sweetman served her complaint. Doc. No. 14 at 3-4. They assert that "only a later document could start the removal clock" because Sweetman's "initial pleading did not make ascertainable that the amount in controversy exceeded $75,000." *Id.* at 3-4. Additionally, Erhan and AD Lucky argue that Sweetman's pre-suit demand is not "other paper from which it may first be ascertained that the case is one which is or has become removable" under section 1446(b)(3). *Id.* at 4-5; 28 U.S.C. § 1446(b)(3).

Although section 1446(c)(2) provides that "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy," two exceptions apply. Under section 1446(c)(2)(A), "the notice of removal may assert the amount in controversy if the initial pleading seeks . . . nonmonetary relief[,] or . . . the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded." 28 U.S.C. § 1446(c)(2)(A). For either exception to apply, the district court must find by a preponderance of the evidence that the amount in controversy exceeds $75,000. 28 U.S.C. § 1446(c)(2)(B).

Connecticut law falls under the latter exception in section 1446(c)(2)(A). When a plaintiff seeks money damages in a Connecticut state court action, the plaintiff must set forth whether their demand is: (1) $15,000 or more; (2) between $2,000 and less than $15,000; or (3) less than $2,000. Conn. Gen. Stat. § 52-91. *See also Vermande v. Hyundai Motor Am., Inc.*, 352 F. Supp. 2d 195, 197 (D. Conn. 2004) ("Connecticut does not require a plaintiff to state the precise amount sought in the litigation . . . .").

The Second Circuit has not decided whether pre-suit settlement communications are "other paper" under 28 U.S.C. § 1446(b)(3).  However, at least three courts in this circuit have adopted the Fifth Circuit's reasoning in *Chapman v. Powermatic, Inc.*, 969 F.2d 160 (5th Cir. 1992).  *Chapman* held that an "other paper" under section 1446(b)(3) must be received "after the filing of the initial pleading."  969 F.2d at 164.  *See also Veneziano v. Wal-Mart, Inc.*, 2007 WL 1810531, at *1 (D. Conn. June 19, 2007) (holding that a defendant must receive an "other paper" under section 1446(b)(3) after the initial pleading for the "other paper" to start the 30 day removal clock); *Grunberger Jewelers v. Leone*, 2003 WL 21488752, at *2 n.3 (D. Conn. June 25, 2003); *Boeck v. Pac. Cycle, Inc.*, 2011 WL 98493, at *2 (W.D.N.Y. Jan. 12, 2011) ("Any 'other papers' examined must post-date the initial pleading.").

I agree with the Fifth Circuit's *Chapman* decision to the extent it recognizes that "other paper" in section 1446(b)(3) necessarily refers to papers filed or served after the defendant receives the initial pleading.  However, I disagree with *Chapman,* and the district courts following *Chapman*, to the extent that it refuses to recognize the ability of pre-suit demands to put defendants on notice that the amount in controversy exceeds $75,000.

Section 1446(b)(3)'s purpose is not to restrict diversity jurisdiction cases from being removed to federal court or to extend the 30-day deadline for removing a case that the defendant already knows is removeable.  Rather, Section 1446(b)(3) serves to protect defendants from missing the removal deadline and to prevent removal based on uncertainty before diversity jurisdiction is apparent.  *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 203-04 (2d Cir. 2001) ("Under the 1949 revision, Congress forbade the removal period from commencing until the defendant received information from which removability could be ascertained . . . .  The legislative history reflects a clear concern for ensuring that a defendant 'know what the suit is

9

about' before triggering the removal clock." (alterations adopted) (internal citations omitted) (quoting *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 352 (1999))); *Moltner v. Starbucks Coffee Co.*, 624 F.3d 34, 38 (2d Cir. 2010) (holding that "the removal clock does not start to run until the plaintiff serves the defendant with a paper" explicitly specifying "the amount of monetary damages sought" because "a bright line rule" reduces uncertainty).

Section 1446(b)(3) applies only when "the case stated by the initial pleading is not removable." 28 U.S.C. § 1446(b)(3). For example, personal injury damages often increase with hospitalization and continuing medical treatment. A complaint may not be initially removable because the amount in controversy is below $75,000 or there is not complete diversity of parties. *See* 28 U.S.C. § 1332. If no pre-suit demand is made and the complaint does not allege an amount in controversy above $75,000, then the case is not immediately removable when received because the defendant does not know that the requirements for diversity jurisdiction are met. Instead, section 1446(b)(3) allows the defendant to remove a case after receiving "an amended pleading, motion, order or other paper" that first creates diversity jurisdiction or demonstrates its existence. 28 U.S.C. § 1446(b)(3). It is inconsistent with the removal statutes, however, to ignore that diversity jurisdiction exists and that a case is removable when the parties are diverse and there is a pre-suit settlement demand for over $75,000.

This case was likely removeable when it was filed. The Defendants could ascertain the removability of this case at the time Sweetman filed the complaint because her pre-suit demand, if received, exceeded the $75,000 jurisdictional threshold. Therefore, the Defendants had 30 days to remove the case after receiving, "through service or otherwise, . . . a copy of the initial pleading setting forth the claim for relief upon which" Sweetman's action is based. 28 U.S.C. § 1446(b)(1). Thus, there was no need for Defendants to await "an amended pleading, motion,

order or other paper from which it [might] first be ascertained" that the case "[was] or ha[d] become removable."  28 U.S.C. § 1446(b)(3).

However, it is not clear that the Defendants knew the case was removable until the parties' communications on May 20 and 21, 2025.  Sweetman's counsel admits that Erhan and AD Lucky's counsel stated neither he nor his clients received the November 25, 2024 settlement demand.  Doc. No. 12-1 ¶ 4 ("[O]n My 20, 2025, Attorney Gary Kaisen stated via e-mail that neither he, nor his client, received the November 25, 2024 demand."); *id.* ¶ 14 (alleging that Attorney Kaisen stated in a May 21 email that "[t]he first time [he] heard Sweetman's $750,000 demand . . . was when [he] spoke to [Sweetman's counsel]" on May 20).  If the Defendants never received Sweetman's November 25, 2024 settlement demand, then they were not on notice that the amount in controversy exceeded $75,000 and the case could be removed.

The parties' briefings do not unequivocally assert that Erhan and AD Lucky were aware of Sweetman's settlement demand at the time they received the initial pleading.  Accordingly, I must determine when Erhan and AD Lucky first knew the amount in controversy exceeded $75,000 after receiving the initial pleading.

B. <u>Whether the parties' May 2025 correspondence began the 30-day removal clock</u>

Sweetman's counsel asserts that he communicated Sweetman's settlement demand of at least $750,000 to Attorney Kaisen, Erhan and AD Lucky's counsel, both orally and in writing on May 20 and 21, 2025.  Doc. No. 12 at 10-11.  *See* Doc. No. 12-1 ¶¶ 8-14 (describing Sweetman's counsel's phone call and emails with Attorney Kaisen on May 20 and 21).  Specifically, on May 21, Sweetman's counsel "personally e-mailed [Attorney Kaisen] the November 25, 2024 demand and corresponding attachments" which demanded the insurance policy limits.  Doc. No. 12-1 ¶ 13.  In response, Erhan and AD Lucky argue that, even though they received both the initial

pleading and information that the claim exceeded $75,000 by May 21, 2025, the case was not removeable.  The Defendants assert that emailed settlement demands are not "other paper" under section 1446(b)(3) and that "[i]nformal emails and telephone calls between counsel are not 'evidence in the record'" which start the removal clock.  Doc. No. 14 at 4-5.

Case law supports Sweetman's argument that the parties' May 20 and May 21 communications established that the amount in controversy was over $75,000.  "Although the Second Circuit has not addressed this issue, most courts have held . . . that § 1446(b) is not limited to papers filed in the litigation and that the reference to 'other paper' in the statute can include pre-removal correspondence between the parties, including . . . settlement offers."[4] *Vermande v. Hyundai Motor Am., Inc.*, 352 F. Supp. 2d 195, 200 (D. Conn. 2004); *id.* at 202 ("[A] settlement letter is only one factor to consider in assessing the amount in controversy and [] courts must consider the context in which such a settlement demand was made.").

In addition, when interpreting "other paper," courts have not required a party to serve a "hard copy" or a physical copy of the relevant document.  Instead, courts interpret "paper" consistently with the Black's Law Dictionary definition, which defines "paper" as "[a]ny written or printed document or instrument."  *Paper*, <u>Black's Law Dictionary</u> (10th ed. 2014).  That definition implies that the document may be printed or written in another format.

Requiring "other papers" to include only hard copies is at odds with technological advances such as e-filing.  Federal and state courts' adoption of electronic filing has made the service of hard copy papers a rare exception.  Further, the language of section 1446(b)(3) undercuts any argument that the "other paper" must be a hard copy.  The triggering event under

---

[4] Additionally, Rule 408 does not prevent the Court from considering settlement offers "for the limited purpose of determining the amount in controversy when the pleadings themselves are inconclusive of that subject."  *Homer v. GMAC Mortg.*, 2011 WL 3859719, at *3 (D. Conn. Aug. 31, 2011) (internal quotation marks omitted) (quoting *Vermande v. Hyundai Motor America, Inc.*, 352 F. Supp. 2d 195, 202 (D. Conn. 2004)).

section 1446(b)(3) is the receipt by the defendant of "a copy of an amended pleading, motion, order or other paper" from which a case's removability is first ascertainable.  28 U.S.C. § 1446(b)(3).  In the present day, it is most likely that any amended pleading, motion, or order would be transmitted electronically by counsel or a court.  So, too, with "other paper."  Thus, receipt of an email message meets the definition of "a copy" of "other paper" in section 1446(b)(3).  *Id.*  The "other paper" can also include discovery responses.  *Cf.* Fed. R. Civ. P. 34(a)(1)(A) (allowing requests for production to include "any designated documents or electronically stored information . . . stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form").

    Courts in this district do not require "other papers" to be formally filed on the docket of the state court litigation "or communicated to the defendant in any specific manner." *Connecticut v. McGraw Hill Companies, Inc.*, 2013 WL 1759864, at *4 (D. Conn. Apr. 24, 2013) ("[T]he 'other papers' referenced in section 1446(b) need not be formally 'filed' in the state litigation . . . .").  However, "the papers must, at the very least, consist of records or documents produced in or emanating from the state-court action itself."  *Id.*  (noting that "'other paper' appears to be limited by the three specific terms" in section 1446(b)(3), all of which refer "to documents generated in the same proceeding").  *See also Document*, Black's Law Dictionary (10th ed. 2014) ("[T]raditionally, . . . the term [document] embraced any piece of paper with information on it.  Today the term also embraces any information stored on a computer, electronic storage device, or any other medium.");  *Tross v. Ritz-Carlton Hotel Co., LLC*, 2012 WL 603302, at *2 (D. Conn. Feb. 24, 2012) (holding plaintiff's medical records provided to defendants through discovery were "other paper" under section 1446(b)(3)).  *Cf. Semack v. 35*

*Hamden Hills Drive, LLC*, 2013 WL 395486, at *2 (D. Conn. Jan. 31, 2013) (citing plaintiff's failure to respond to the defendant's offer to cap damages at $75,000 as evidence that the amount in controversy exceeded $75,000).

An "other paper" as described by section 1446(b)(3) is not strictly defined by its format. Courts evaluate whether a written communication constitutes an "other paper" by considering the information it contains and the formality with which a party communicates that information. "[A] number of cases have allowed a demand or settlement letter to be considered in determining the amount in controversy[.]"[5] *Daly v. United Airlines, Inc.*, 2017 WL 3499928, at *4 (D. Conn. Aug. 16, 2017). *See also Moltner v. Starbucks Coffee Co.*, 624 F.3d 34, 36, 38 (2d Cir. 2010) (affirming the district court's denial of a motion to remand to state court because plaintiff's "letter stating that she sought damages not to exceed $3 million" started the removal clock and the removal was timely); *Arute v. Carnival Cruise Line Companies*, 2007 WL 1114038, at *2-3 (D. Conn. Apr. 13, 2007) (holding that an offer of judgment served on the defendant "offering to consent to entry of judgment on all claims for payment by Carnival of $17,500" indicated "the litigation [was valued] significantly less than $75,000"); *Speer v. Deutsche Bank Nat'l Tr. Co.*, 2024 WL 340777, at *4 (D. Conn. Jan. 30, 2024) (holding plaintiff's settlement demand letter reinforced that the amount in controversy was met) ("[T]he fact that Plaintiff values the case at far more than $75,000 weighs in favor of finding that the amount in controversy requirement has

---

[5] The Second Circuit has also allowed oral settlement offers to prove the amount in controversy. *See Yong Qin Luo v. Mikel*, 625 F.3d 772, 775-76 (2d Cir. 2010) ("The district court held an initial status conference with the parties, and plaintiff declined to limit her damages $75,000 or less. Shortly after that conference, Luo's counsel told defense counsel that Luo's demand was $600,000. At the time of removal, then, the amount in controversy exceeded $75,000."); *Homer v. GMAC Mortg., LLC*, 2011 WL 3859719, at *3-4 (D. Conn. Aug. 31, 2011) (holding that an oral settlement demand of $500,000 during a telephonic conference could establish the amount in controversy). *But see Dell'Aera v. Home Depot, U.S.A., Inc.*, 2007 WL 2071632, at *5 (D. Conn. July 13, 2007) (holding that a plaintiff's oral statement that he would not settle for less than "six figures" was "insufficient to trigger the thirty day clock under 1446(b)" in part because the "the opinion was never reduced to writing" and the plaintiff "never approached the topic with greater specificity"). Here, there is no need to decide whether Sweetman's oral settlement demands were sufficient to determine the amount in controversy because he reiterated them over email.

been met."); *Champion v. CVS Albany, LLC*, 2023 WL 1766284, at *2-3 (E.D.N.Y. Feb. 3, 2023) (holding a mediation submission constituted an "other paper" triggering the 30-day removability window).

"[C]onstru[ing] the removal statute narrowly, resolving any doubts against removability," and rigorously enforcing the statutory deadline, I hold that Erhan and AD Lucky's removal of the case is untimely under section 1446(b)(3). *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)); *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1046 (2d Cir. 1991). Sweetman avers that "Defendants undoubtedly received . . . a demand above $75,000.00 on May 21, 2025." Doc. No. 12 at 10. Erhan and AD Lucky do not dispute receiving Sweetman's May 20 and 21 settlement demands. *See* Doc. No. 14 at 4-5. Further, their argument that "neither an email nor a telephone call" can qualify as "other paper" under section 1446(b)(3) is unsupported by precedent. *Id.* *See, e.g., Vermande*, 352 F. Supp. 2d at 200-02 (holding "other paper" under section 1446(b)(3) can include pre-removal correspondence between the parties, such as settlement offers communicated by letters).

Assuming that Erhan and AD Lucky were not aware the amount in controversy exceeded $75,000 when the Defendants received Sweetman's initial pleading, Sweetman's emailed settlement demands on May 20 and May 21, 2025 were "other paper" under section 1446(b)(3) and started the Defendants' 30-day removal clock.[6] The settlement demands did not have to be

---

[6] This holding is not affected by whether Erhan and AD Lucky received the complaint when Sweetman served it on January 17, 2025 or when Sweetman sent a copy of the signed summons and complaint to their counsel of record on April 21, 2025. Doc. No. 12 at 2-3; Doc. No. 1 ¶¶ 2-4. "The knowledge and admissions of an attorney are imputed to his client." *Lafayette Bank & Tr. Co. v. Aetna Cas. & Sur. Co.*, 177 Conn. 137, 140 (1979). *See also Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) ("[E]ach party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" (quoting *Smith v. Ayer*, 101 U.S. 320, 326 (1879))); *In re Locust Bldg. Co.*, 299 F. 756, 761 (2d Cir. 1924) ("It is well settled that knowledge of the attorney is imputed to the client or principal."). Thus, when Attorney Kaisen learned about Sweetman's settlement demand, that knowledge was imputed to Erhan and AD Lucky.

formally filed in the Connecticut state court case; they only needed to be related to the state-court action.  *See Moltner v. Starbucks Coffee Co.*, 624 F.3d 34, 36, 38 (2d Cir. 2010) (affirming the district court's denial of a motion to remand to state court because plaintiff's "letter stating that she sought damages not to exceed $3 million" started the removal clock and the removal was timely).

 Erhan and AD Lucky's removal is untimely because they did not remove the case to federal court within 30 days after receiving an "other paper" notifying them the amount in controversy exceeded $75,000.  Therefore, I grant Sweetman's motion to remand the case to Connecticut Superior Court under section 1447(c).

I do not address the parties' remaining arguments concerning removability because Sweetman's May 20 and May 21 communications firmly established the amount in controversy exceeded the jurisdictional threshold.

C.  <u>Whether attorneys' fees are warranted</u>

Under 28 U.S.C § 1447(c), a federal district court may impose attorneys' fees and costs on a party who improperly removes a case to federal court.  Imposition of fees is within the discretion of the district court.  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  "'[I]f clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees,' and 'district court decisions, let alone conflicting district court decisions, do not render the law clearly established.'" *Williams v. Int'l Gun-A-Rama*, 416 F. App'x 97, 99 (2d Cir. 2011) (alterations adopted) (quoting *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007)).

16

I exercise my discretion to deny Sweetman's request for an award of attorneys' fees. Doc. No. 12 at 15-16.  Sweetman's motion to remand presented a procedural issue about which the law was not clearly established.  I do not conclude that Erhan and AD Lucky's untimely decision to seek removal was objectively unreasonable.

**IV.    Conclusion**

Sweetman's motion to remand, doc. no. 12, is **granted**.

I request the Clerk to remand this case to the Connecticut Superior Court, Hartford for further proceedings, and to close this case.

So ordered.

Dated at Bridgeport, Connecticut, this 20 day of January 2026.


/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge